JAMES CAMPBELL *vs.* JOSEPH FOSTER and others.

## April Term, 1875.

TRUST—BURDEN OF PROOF—LACHES.—Upon bill filed to rectify a deed of certain land, on the ground that the land had been bought by the complainant's father, and the title, after his death, wrongfully taken by his widow, the complainant's step-mother, to herself, the burden of proof, after the lapse of fourteen years since he came of age, and six years after the death of the step-mother and the vendor, is clearly upon the complainant to make out his case beyond a reasonable doubt; and the bill necessarily fails if the proof shows that the original title bond was made to the husband and wife jointly.

CROSS-BILL NOT ADMISSIBLE WHERE NOT DEFENSIVE.—An answer cannot properly be filed as a cross-bill, nor will a formal cross-bill lie, where the matter set up was no defence to the original bill, nor auxiliary to the defence, nor in any way connected with it; but if the parties make no objection, neither will the court.

TRUSTEE OF SPECIFIC PROPERTY NOT AUTHORIZED TO ENQUIRE INTO PREVIOUS TRANSACTIONS OF THE GRANTOR.—A trustee to whom specific property has been conveyed to be held and managed for the grantor is not authorized to enquire into previous transactions of the grantor, in the sale or exchange of other lands.

RESCISSION OF A LAND TRADE REFUSED UNDER CIRCUMSTANCES.—Where a bill for rescission was not filed for over two years after an exchange of lands, in which the complainant also received a money consideration in addition, and during the interval the complainant had used the money and sold the land received in exchange, permitted valuable improvements to be put upon the land conveyed by him in exchange, and expressed no disapproval of the trade at any time up to his death, the court declined to rescind, although the proof disclosed the fact that he was barely of age when the exchange was made, dissipated and heedless, and that the other parties had encouraged him in throwing off parental control, and pandered to his vices.

*H. H. Harrison*, for complainant.
*M. C. Goodlett*, for Foster and wife.
*Ed. Baxter*, for the Hardings.

THE CHANCELLOR :—Bill filed on the 4th of March, 1872, against Joseph Foster and Mary, his wife, John Broderick, E. B. McClanahan, trustee of Andrew J. Harding, and Andrew J. Harding. The object of the bill is to recover an undivided half interest in lot No. 155, in McGavock's addition to Nashville, claimed by the complainant as co-heir of his father with Mary Foster, his half-sister. The facts, as shown by the record, are that James Campbell, sr., departed

this life on the 25th of January, 1855, leaving a widow, Lavinia Campbell, and three children—the complainant, a child by his first wife, and Thomas and Mary, children by his wife Lavinia. Of these children Thomas died in 1863, intestate, and without ever having married, and Mary intermarried with the defendant Joseph Foster, in 1865. The complainant was born in 1837, and, at the time of his father's death, was married, and living apart from the family. The lot in controversy was bought and built upon, though not fully paid for, during the life of James Campbell, sr. Lavinia, his widow, continued to reside upon it with her children, without, so far as appears, any claim on the part of complainant, until her death, on the 17th of November, 1865. The lot had been bought from Dr. D. T. McGavock, and, on the 16th of September, 1856, he, by deed of that date, reciting a consideration of $900 to him paid, conveyed the said lot to the said Lavinia Campbell, her heirs and assigns forever, with covenants of seizin, general warranty, and against encumbrances. This deed was acknowledged by the bargainor on the 22d of September, 1856, and registered on the same day. On the 14th of September, 1869, Foster and wife, by deed duly proved and registered, sold and conveyed the said lot to the defendant Andrew J. Harding, and, on the same day, in consideration of this conveyance and the further consideration of $500, the said Andrew J. Harding sold and conveyed to Foster and wife sixty-five acres of land in the river bottom north of Nashville. On the 24th of May, 1870, Andrew J. Harding sold and conveyed said lot to the defendant John Broderick, for the recited consideration of $1,000. Sometime in 1870, when does not appear, but doubtless after the sale to Broderick, Harding seems to have conveyed all his property to the defendant McClanahan, " to be held and managed by him to shelter said Andrew J. against the machinations of the designing." At any rate, this is the description of the trust as given by McClanahan in his answer, the instrument

itself, although promised, not having been produced and filed.

The ground upon which the complainant rests his claim for relief is that the lot in controversy was bought by his father, who paid the greater part of the consideration in his life-time, and that his widow had fraudulently taken the title in her own name, instead of having the deed made to the children of her husband. The bill alleges that Foster and wife, and Harding and Broderick, their vendees, were aware of complainant's claim. Of this charge there is not a particle of proof, so far as Harding and Broderick are concerned. But this difficulty is obviated by the defendants McClanahan and Harding, in their answer, consenting to the relief sought, and by the defendant Broderick filing a written agreement, signed by him, to the effect that, in consideration of $550 secured to be paid, he is willing to the rescission asked. The issue, therefore, is upon the complainant's right to relief as against Foster and wife.

This right depends upon the point whether the lot was in fact, as alleged, bought and in part paid for by complainant's father in his life-time, and the title fraudulently, or at least wrongfully, taken to Lavinia Campbell, the widow. The deed of David T. McGavock to Mrs. Campbell was executed on the 16th of September, 1856, and duly registered on the 22d of the same month. At that time, as the record shows, the complainant was residing with his wife, in Nashville, in the vicinity of his step-mother, and, of course, with full knowledge that she was residing on the place with her two children. It is stated in the answer of Foster and wife, and the fact is not shown to be otherwise by the complainant, who is himself examined as a witness, that complainant continued to reside at Nashville until the war, when he went off, probably, with the Confederate army. He came of age in 1858, and did not leave Nashville for three years thereafter. He offers no excuse for his silence in relation to his rights, as now set up, during these years.

He seems not to have been very active even in the present effort, for there are indications on the face of the bill, and still stronger indications in the answer of McClanahan, that he, as Harding's trustee, had hunted up the complainant, with a view, through the instrumentality of his claim, to set aside the exchange, made between Foster and wife and Harding, of the lot in controversy for the sixty-five acres. Be this as it may, after such long delay and acquiescence in the title of the widow, without any satisfactory explanation, the burden of proof to make out his case beyond a reasonable doubt is clearly upon the complainant. This burden is made the more imperative as the two persons who certainly knew the facts, namely, Lavinia Campbell and Dr. McGavock, have both died—the former in 1865, the latter in 1866.

The complainant's evidence, on which he relies to make out his claim, consists of his own testimony and the testimony of W. D. Scott. His own testimony is meagre in the extreme. He says the lot was bought by his father, who said he wanted it as a homestead for his three children, and adds, on cross-examination: "I can't tell how I knew it was bought by father, but, as well as I recollect, I have heard him speaking with McGavock about it." After his father's death, he says, he went to see his step-mother before the deed was taken. " She wished me to go and pay the fifty dollars. I told her I could not do it, as I had not the money. She told me I could have my part of the property; I was entitled to my share of it, as I was as faithful to her as one of her own children." This is literally all the witness has to say. Conceding its admissibility as evidence, it shows that he did not know that his father had bought the property, and only inferred it from hearing him speak with McGavock about the lot. The conversation with the step-mother, if it amounts to anything, shows that she was inclined to concede to him, on account of his faithfulness to her, and in consideration of the payment of the residue of

purchase money, an interest in the property to which he was not entitled, rather than a share to which he had a right.

W. D. Scott's evidence is far more intelligible, but even less favorable to the complainant than his own. He was a school-master at the date of the purchase of the lot, to whom the complainant was sent as a pupil, and took his pay out in groceries at the little store kept by Campbell, sr., and his wife, the wife being, as all the proof shows, the active and efficient member. He was called in to witness two payments on the notes given to McGavock for the lot, the money being paid by the wife, and the receipts drawn up by the witness. The notes, he says, were signed, he thinks, by both Mr. and Mrs. Campbell. He saw the title bond from McGavock, but does not remember whether it was made to Mr. or Mrs. Campbell, or to both. He proves that Campbell, sr., was a man of feeble constitution, given to dissipation, and of idle habits, and that Mrs. Campbell was active, energetic, and managing. This evidence does not prove the point upon which the complainant's case must rest, namely, that the title bond was made to complainant's father. It does prove positively that the notes given for the purchase money were signed by both husband and wife. The inference from which, if we are driven to inference, would be that the title bond was made in like manner to both. And this inference is rendered almost equivalent to certainty by the fact that the vendor of the lot did make the title to the wife, as the survivor. He certainly had no inducement, so far as appears, to do otherwise than as his contract required.

If the title bond were made jointly to the husband and wife, the complainant's case necessarily fails. For, even if it be true that the money was the husband's, he had the right to have the title taken to his wife, as a gift to her, or jointly to them both. In the latter event the wife would, upon his death, take by survivorship—the rule of the common law having always prevailed in this state, that, where an estate is granted to husband and wife, they are both seized

of the entirety, and the survivor takes the whole. Co. Lit. 187; *Taul* v. *Campbell*, 7 Yerg. 319. And it is also settled in this state that, if a note or other instrument be made to husband and wife, with the assent of the husband, the rights under it survive to the wife. *Johnson* v. *Lusk*, 6 Coldw. 113, affirming a decision made by me as special Chancellor, since reported in 1 Tenn. Ch. 3.

I am clearly of opinion that the complainant has not only failed to establish the case made in the bill, but he has made out the defendants' case, without looking to the evidence of the defendants, which, however, strongly tends in the same direction. The bill must, therefore, be dismissed with costs.

There are indications, as I have already stated, in the bill and the answer of McClanahan, that this suit was rather the act of the latter than of the complainant. The object was to set aside the transaction between Foster and wife on the one hand, and Andrew J. Harding on the other, by which the latter conveyed to the former sixty-five acres of land for the lot in question and $500. In this view the complainant is made to say, without any relevancy to his own case whatever, that he is informed that the defendant Harding was, at the date of said trade, barely of age, a profligate youth, and probably intoxicated, and imposed upon by Foster and wife, and induced to convey property worth three times as much as the consideration received by him. The trustee, in his answer, filed in the joint names of himself and Harding, but only sworn to by him, admits the truth of these allegations, and goes at some length into a detail of circumstances tending to show that Foster and wife had pandered to the worst appetites of Harding, and had, in the exchange of lands, obtained a bargain largely to their advantage. This answer was filed, under § 4323 of the Code, as a cross-bill against the complainant and the other defendants, and the court was asked to rescind the conveyance of the sixty-five acres to Foster and wife on the ground of " fraud, imposition, and undue influence." Foster and wife filed an answer to " the answer, filed as a

cross-bill, of E. B. McClanahan, trustee of A. J. Harding."
This answer admits the conveyance by Harding to McClana-
han, "for certain purposes in the trust deed expressed," of
all the property he was possessed of at the date of the deed,
but denies that said deed attempted to give, or did give, to
McClanahan, as trustee, any power to come into court to
set aside conveyances made by Harding before the date of
said deed.  The answer further denies the principal allega-
tions of the cross-bill.  Proof has been taken on both sides,
the evidence showing clearly that Harding was barely of
age when the trade was made with Foster and wife, that he
was a profligate, dissipated, and improvident youth, though
neither an imbecile nor insane.  The evidence tends, also,
to show that Foster and wife did pander to his baser
appetites, and take advantage of his reckless dealings to
obtain an advantageous bargain.  Harding has died since
the filing of the cross-bill, and the suit has been revived,
by consent of the defendants, in the name of his personal
representative and heirs.

The original bill was filed only for the purpose of assert-
ing the complainant's right, as heir of his father, to an
undivided interest in lot No. 155.  The object of the cross-
bill is to rescind the sale and conveyance, by Harding to
Foster and wife, of the sixty-five acres of land.  The com-
plainant's title and his right to the relief sought by him
did not depend upon the trade between Harding and Foster
and wife, and would not have been affected the one way or
the other by the result of the suit for a rescission.  The
matter of the cross-bill was no defence to the original bill,
nor auxiliary to it, nor in any way connected with it.
The two suits have nothing in common except that the
property to which the complainant set up title was, in part,
the consideration for the other conveyance.  The so-called
cross-bill is, in this view, not a cross-bill at all, in any sense,
but an original bill, and therefore not such a bill as could
be filed by an answer, under the Code, § 4323, nor as a
formal cross-bill.  It might have been successfully met by

a demurrer, as I have held at this term in the case of *Hergel* v. *Laitenberger*, 2 Tenn. Ch. 251.

The defendants have, however, seen proper to file an answer, a course of proceeding which, in the case of an original bill, is a waiver of objection to the jurisdiction, and makes it the duty of the court, under the Code, to hear the cause upon its merits. Code, § 4321 ; *Borem* v. *Foster*, 6 Heisk. 333. The tendency of the courts—and of none more so than our own supreme court—has been, of late years, and very properly, in favor of dispensing with form where the parties themselves have set the example. And an eminent judge presiding in the circuit court of the United States, where the rules of pleading are usually strictly adhered to, has yielded to this tendency in a case precisely like the present, an answer having been filed as a cross-bill without any warrant of law, and having been replied to. *Hubbard* v. *Turner*, 2 McLean, 539, 540. I feel justified, therefore, in proceeding to hear and determine the cross-suit, notwithstanding its plain violation of established forms.

The cross-bill to sustain the trustee's right to the relief sought only avers that in 1870 Harding had conveyed his property to the trustee, "to be held and managed by him to shelter said Andrew J. against the machinations of the designing." Foster and wife, in their answer, make the direct issue that the trustee is not authorized by the trust deed to call in question conveyances previously made by Harding. The deed itself is not filed, and there is nothing in its terms, as recited in the cross-bill and in the answer of Foster and wife, which confers upon the trustee power to interfere with the trades of the grantor previously made, nor, for that matter, with any trade he might have seen proper to make afterwards. At most, the trust deed may have vested the trustee with the naked legal title to the property conveyed, subject to the right of disposition which necessarily remained, as an incident to the beneficial interest reserved, in the grantor. *Dick* v. *Pitchford*, 1 Dev. & B. Eq. 486. The trade and conveyances sought to be impeached

were clearly not void, even if the facts relied on in the cross-bill were true, but only voidable at the option of the grantor. It is obvious, therefore, that however praiseworthy the intentions of the trustee in this suit may have been, he has wholly failed to show any ground upon which relief in his name, or in his favor, can be rested. The cross-bill must, consequently, so far as he is concerned, be dismissed with costs.

The defendants Foster and wife, as we have seen, treat the cross-bill as the bill of the trustee alone, and file their answer, designating it as an answer to the cross-bill of the trustee. Strictly speaking, there is no answer to the cross-bill as the bill of Harding. If the defendants had, in some proper form, made with him the issue they make with the trustee, the point would have been worth grave consideration whether Harding appears sufficiently as an actor in the cross-suit. On the other hand, considered as a party seeking relief, Harding has made no issue with the defendants, as he might have done, by taking his cross-bill for confessed against Foster and wife. Not having done this, the court might, if he were alive, consider him as never having been a party, or as having abandoned the prosecution. The parties have, however, since his death, by a written agreement signed by their respective solicitors, revived the suit in the name of his personal representative and heirs, thus treating him as a party. Obviously, both sides have been negligent of established forms, and the court may be justified in following their example so as to reach the merits. The case seems to have been prepared for hearing upon the supposition that the answer of Foster and wife, although in form only an answer to the cross-bill as the bill of the trustee, was in fact an answer to the cross-bill as the bill of Harding.

In this view the answer does make the point that it is the trustee, and not Harding, who is seeking a rescission. Upon the issue thus tendered there is no evidence, outside of the bill itself, to show that Harding was ever dissatisfied with

the trade, or sought to have it set aside. His deed to Foster and wife was made on the 14th of September, 1869, and the cross-bill is filed on the 23d of April, 1872. During this interval he sold lot No. 155 to Broderick, made several other conveyances of portions of his realty, and finally made the trust conveyance to McClanahan. Under these circumstances, the defendants having gone into possession under their trade and improved the property, and Harding having taken possession of the lot traded in exchange, and sold and conveyed it, the evidence should be clear to justify a rescission.

The evidence, it is conceded, does not show that Harding was incompetent to contract, nor does it show weakness of intellect other than the result of his bad habits. It fails to show that he was intoxicated when the trade in controversy was made. It does show inadequacy of consideration, but not very gross inadequacy. It does establish that Harding was just of age, dissipated, and profligate, and that the defendants encouraged him in throwing off parental control, and pandered to his vices. Under these circumstances, if he had himself, in any reasonable time after the trade, sought directly to impeach it, I should have been inclined to lend a favorable ear to his plaint. He makes no complaint, however, but, on the contrary, ratifies the trade by selling the property received in exchange, and allowing the property conveyed by him to be taken possession of and improved. *Moore* v. *Reed*, 2 Ired. Eq. 580. The suit finally brought is manifestly not so much his act as that of his trustee. I have not been able to find any solid ground upon which a decree of rescission can be rested, and must refuse it. The defendants Foster and wife will pay the costs of the cross-suit.